IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOLAN DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-13-1761 |
| WOODLANDS RELIGIOUS COMMUNITY, | § | |
| INC. d/b/a INTERFAITH OF THE | § | |
| WOODLANDS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant Woodlands Religious Community, Inc. d/b/a
Interfaith of the Woodlands' Motion for Summary Judgment (Document
No. 29). After carefully considering the motion, response, and
applicable law, the Court concludes as follows.

I.  Background[1]

Plaintiff Nolan Davis ("Plaintiff"), who pleads he is an
African-American man, was hired as an employment counselor by
Defendant Woodlands Religious Community, Inc. d/b/a Interfaith of

---

[1] Virtually all of the facts in the case come from Defendant,
and are uncontroverted. Plaintiff's evidence consists of only a
two-page affidavit and three pages of staff productivity records,
upon which Plaintiff relies to argue that Defendant's reason for
terminating him was pretextual. Plaintiff in his Response presents
no evidence of discrimination or retaliation as a predicate for
arguing that the declared nondiscriminatory basis for his
termination was pretextual.

the Woodlands ("Defendant") on April 13, 2009, when Plaintiff was 55 years old.[2] Defendant is a non-profit agency that relies heavily on grants and donations.[3] Defendant's funding for the 2012 contract year was reduced by approximately fourteen percent, causing Defendant to close its Spring Branch Career Office and to restructure and reduce its staff in 2011.[4] As part of its reduction in workforce, Defendant terminated 21 employees, including Plaintiff on September 1, 2011, at which time Plaintiff was 58 years old.[5] Of the 21 employees laid off, eight were Hispanic, seven were Caucasian, and six were African-American.[6]

Defendant maintains that the employees to be laid off were selected based on their cumulative scores on performance reviews, and that Plaintiff's mid-year review was below par.[7] Plaintiff testifies that Defendant's declared reason for choosing him for termination based on his performance reviews was pretextual, pointing out that Defendant hired a new employment counselor two weeks after Plaintiff's termination, and conclusorily stating that

---

[2] Document No. 29, ex. 2 ¶ 3; id., ex. 3.

[3] Id., ex. 2 ¶ 6.

[4] Id.; id., ex. 6.

[5] Id., ex. 2 ¶ 5; id., ex. 5.

[6] Id., ex. 2 ¶¶ 7-8.

[7] Id., ex. 2 ¶¶ 7, 12.

the performance review "was orchestrated to ensure I would score poorly."[8]

After receiving a right to sue letter from the Equal Employment Opportunity Commission,[9] Plaintiff filed this suit alleging race discrimination under Title VII, age discrimination under the Age Discrimination in Employment Act (the "ADEA"), and retaliation.[10] Defendant moves for summary judgment, arguing that Plaintiff has no evidence that he was discriminated against because of his age or race, or that he was retaliated against for exercising his protected rights.[11]

## II.  Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that

---

[8] Document No. 31-1 ¶¶ 3, 4.  Plaintiff further testifies that only a single employment counselor was able to meet the purported benchmark of 169-180 direct job placements annually, that Plaintiff's annual total of 72 direct placements exceeded the performance of all but three employment counselors, and that four employment counselors had fewer than 56 placements and were not fired.  Id. ¶¶ 16-19.

[9] Document No. 6.

[10] Document No. 5 (Pl.'s Am. Compl.).

[11] Document No. 29.

summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-

Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

## III. Analysis

### A. Race Discrimination

Plaintiff alleges that "Defendant intentionally discriminated against Plaintiff because of his race in violation of Title VII by promoting two non-African-American males of lesser qualifications and experience than Plaintiff to the position of Career Office Supervisor," that "Defendant subsequently promoted a non-African-American female to the position of Staffing Specialist," and that "although there were recent hires, Plaintiff was told he was terminated due to cutbacks."[12]

Title VII proscribes an employer from refusing to hire, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). The Title VII inquiry is "whether the defendant

---

[12] Document No. 5 ¶ 8.

5

intentionally discriminated against the plaintiff." <u>Roberson v.</u>
<u>Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).
Intentional discrimination can be established through either direct
or circumstantial evidence. <u>Wallace v. Methodist Hosp. Sys.</u>, 271
F.3d 212, 219 (5th Cir. 2001). Plaintiff disavowed knowledge of
any direct evidence of discrimination,[13] and hence his claim can be
analyzed only by using the framework set forth in <u>McDonnell Douglas</u>
<u>Corp. v. Green</u>, 93 S. Ct. 1817 (1973). <u>Wallace</u>, 271 F.3d at 219.
Under this framework, a plaintiff must first establish a *prima*
*facie* case of discrimination. <u>Id.</u>

Once the plaintiff establishes a *prima facie* case, the burden
then shifts to the employer to articulate a legitimate,
non-discriminatory reason for its actions. <u>Id.</u> If the employer
sustains its burden, the *prima facie* case is dissolved, and the
burden shifts back to the plaintiff to establish either: (1) that
the employer's proffered reason is not true, but is instead a
pretext for discrimination (pretext alternative); or (2) the
employer's reason, while true, is not the only reason for its

---

[13] Plaintiff testified in his deposition that there were no
comments made about his ethnicity or race, and that he did not know
of any jokes made in his workplace about African-Americans, any
emails that were derogatory toward African-Americans, or any
comments by supervisors that made him think they were
discriminating against African-Americans. Document No. 29, ex. 1
at 38:18-39:5. *See also* <u>id.</u>, ex. 1 at 85:23-86:1 (Q. . . . [Y]ou
don't have any personal knowledge specifically linking any one of
[Defendant's management staff] to discriminating against you; is
that right? A. Yes, that's true.").

conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). Id.; Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc., 482 F.3d 408, 411-12 (5th Cir. 2007). Where, as here, the Plaintiff alleges pretext, he "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." Wallace, 271 F.3d at 220.

In order to establish a *prima facie* case, Plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, that similarly situated individuals outside her protected class were treated more favorably. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Plaintiff in his Response produces no evidence of any less qualified individual outside his race being promoted in his stead. With no evidence of any comparator who received a promotion to a job for which Plaintiff applied and was qualified, Plaintiff's failure to promote claim does not survive summary judgment.

Plaintiff's Amended Complaint does not expressly allege that his termination was based on race discrimination. At most, such a claim arguably may be inferred from the final sentence of Plaintiff's race discrimination claim: "Finally, although there were recent hires, Plaintiff was told he was terminated due to

cutbacks."[14]  Defendants do not dispute that Plaintiff, as an African-American, is a member of a protected class, that he was qualified for his position, or that his termination was an adverse employment action.   However, Plaintiff has not presented any argument or evidence showing that similarly-situated employees outside his class were not laid off, and hence has not established a *prima facie* case of race discrimination.[15]

Plaintiff testifies that "[Plaintiff's] direct placements exceeded, in some cases greatly, those of other employment counselors who were not fired," and identifies Contina Tyler, Amparo Rosa, Ester Rodriguez, Marsha Hewitt, and Zelinka Deal as such counselors.[16]  However, Plaintiff neither argues nor produces evidence that these employees are not African-American,[17] or that they were similarly situated to Plaintiff.  *See* <u>Vaughn v. Wood-forest Bank</u>, 665 F.3d 632, 637 (5th Cir. 2011) ("Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical'

---

[14] Document No. 5 ¶ 8.

[15] Plaintiff's Response focuses exclusively on the argument that Defendant's stated reasons for terminating Plaintiff are pretextual, and simply ignores the requirement for showing a *prima facie* case of discrimination.  *See* Document No. 31.

[16] Document No. 31 ¶ 18.

[17] The uncontroverted evidence is that Zelinka Deal, at least, is African-American.  Document No. 29, ex. 2 ¶ 23.

conduct."). Accordingly, Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

## B. Age Discrimination

Plaintiff alleges that "Defendant intentionally discriminated against Plaintiff because of his age, 58, in violation of the ADEA by terminating him instead of younger personnel on staff."[18]

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of that person's age. *See* 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (quoting Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2351 (2009)).

Plaintiff fails to advance any argument or produce any evidence that age was the but-for cause of his termination. Although he argues that Defendant's reason for terminating him was pretextual, his Response makes no mention whatsoever of age. *See* St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2752 (1993) ("But a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original).

---

[18] Document No. 5 ¶ 11.

Furthermore, Plaintiff affirmatively admitted in his deposition that, other than his belief that his job performance was better than other people's, "there's no other evidence in [his] opinion to support [his] claim that [he was] terminated because of [his] age."[19] Accordingly, Plaintiff has not raised a genuine issue of material fact as to whether his age was the but-for cause of his termination, and Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

C.    Retaliation

Plaintiff alleges "[a]fter Plaintiff made inquiry regarding another position within the organization, Defendant retaliated against him by terminating his employment."[20] Plaintiff's Amended Complaint contains no further explanation of the purported

---

[19] *See* Document No. 29, ex. 1 at 36:23-37:23 ("Q. Did anyone make any comments to you about being old or older? A. No, ma'am. Q. Did anyone ever make jokes in the office about older employees or employees who were older not being able to do a job? A. Not that I know of. Q. Did anyone ever circulate e-mails about wanting to keep a younger workforce? A. Not that I know. Q. Did anyone ever make any references to you that Interfaith wanted a younger workforce? A. Not that I know of. Q. Did anyone at--and I literally mean anyone that you work with at Interfaith. A. Not that I know of. Q. Okay. Was there anything in your work environment on a daily basis that made you think that Interfaith was discriminating against employees who were older? A. Not that I know of. Q. And would you agree with me, Mr. Davis, that other than your belief that your job performance was better than other people's, there's no other evidence in your opinion to support your claim that you were terminated because of your age? A. Not that I know of.").

[20] Document No. 5 ¶ 12.

10

retaliation, and neither Plaintiff's Response to Defendant's Motion for Summary Judgment nor Plaintiff's summary judgment evidence mentions retaliation or Plaintiff's "inquiry regarding another position."

Although Plaintiff's Amended Complaint does not identify the law under which his putative retaliation claim arises,[21] "[t]he anti-retaliation provisions of the ADEA and Title VII are similar and 'cases interpreting the latter provision are frequently relied upon in interpreting the former.'" Holt v. JTM Indus., Inc., 89 F.3d 1224, 1226 n.1 (5th Cir. 1996) (citation omitted). To establish a *prima facie* case of retaliation under Title VII or the ADEA, the plaintiff must establish that: (1) he participated in an activity protected by Title VII or the ADEA; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007) (Title VII); Holt, 89 F.3d at 1225-26 (ADEA). Plaintiff has presented no evidence that he opposed discrimination on the basis of race or age or otherwise engaged in any activity protected by Title VII or the ADEA. *See* Brown v. United Parcel Serv., Inc., 406 F. App'x 837, 840 (5th Cir. 2010) ("Title VII protects only opposition to discrimination based on 'race, color,

---

[21] Defendant treats Plaintiff's retaliation claim as arising under Title VII. Document No. 29-1 at 14-24.

religion, sex, or national origin.'") (quoting 42 U.S.C. § 2000e-2(a)(1)); 29 U.S.C. § 623(d) (prohibiting retaliation against employee who "has opposed any practice made unlawful by [the ADEA]" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]"). Because Plaintiff has failed to present evidence of retaliation against him based on his engaging in protected activity, Plaintiff's retaliation claim is dismissed.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Woodlands Religious Community, Inc. d/b/a Interfaith of the Woodlands' Motion for Summary Judgment (Document No. 29) is GRANTED, and Plaintiff Nolan Davis's claims are DISMISSED with prejudice.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this _18TH_ day of November, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE